Filed 5/19/16  In re Damien Z. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Damien Z. et al., Persons Coming Under the Juvenile Court Law. | B268571 (Los Angeles County Super. Ct. No. CK93330) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Lorena P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Rudolph A. Diaz, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

\* \* \* \* \* \*

The juvenile court terminated the parental rights of Lorena P. (mother) and Ivan Z. (father) over their four children after finding the children to be adoptable. In this appeal, mother argues that the court's finding of adoptability is not supported by substantial evidence. We disagree and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

Mother and father have four children: Damien (born 2007), Adam (born 2009), L. (born 2010), and Anthony (born 2012).

In petitions filed in May 2012 and July 2012, the Los Angeles County Department of Children and Family Services (Department) asked the juvenile court to exert dependency jurisdiction over all four children under Welfare and Institutions Code section 300, subdivision (b)[1] because (1) mother and father have a history of domestic violence, (2) father is a substance abuser, and (3) mother is a substance abuser, and was using methamphetamine while pregnant with Anthony. In August 2012, mother and father admitted these allegations and the juvenile court declared the children to be "dependents," removed them from their parents, and ordered reunification services.[2] In April 2014, the Department filed additional allegations against father, to whom the children had been released in December 2013, because he was using inappropriate physical discipline on Anthony in violation of section 300, subdivisions (b) and (j); father admitted these allegations.[3]

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise indicated.

[2] The Department also alleged that the parents' domestic violence triggered the juvenile court's jurisdiction under subdivision (a) of section 300, but this allegation was dismissed as part of the parents' admission to the subdivision (b) allegations.

[3] The Department also alleged that father's conduct violated subdivision (a) of section 300, but this allegation was dismissed as part of father's admissions to the other allegations.

2

After conducting periodic reviews of the parents' progress toward reunification, the juvenile court in February 2015 terminated reunification services and set the matter for a permanency planning hearing.

At the October 2015 permanency planning hearing, the juvenile court reviewed the evidence regarding the children's adoptability. The court had before it evidence of the children's physical, emotional and developmental well-being. Damien, the eldest child, had never had any physical, emotional, or developmental issues. Adam and L., the middle children, had no physical or developmental issues, but exhibited "unique and challenging behaviors" after they were initially removed from their parents in 2012—Adam threw tantrums, lacked self-control and talked back to his teachers, and L. fought with her older brothers. However, by 2015, Adam's and L.'s behavioral issues had been addressed, and each was "well adjusted." Anthony, the youngest child, had no physical issues, but was participating in speech therapy through the Regional Center and had a fear of bathrooms outside of his foster parents' home, a fear that L. had started to mimic.

The juvenile court also had before it evidence of the Department's efforts to find a permanent placement for the children. All four children had been placed together with a foster family since July 2014, but the foster parents were not interested in adoption. The children's maternal grandmother was not suitable because she had not acted to protect the children despite her knowledge of the neglect to which they had been subjected, and because her adult son who regularly visited her home had a criminal record. The children's paternal aunt was the primary caregiver for three other grandchildren, and the father of those grandchildren—who was living in her house—had a criminal record. The children's paternal uncle had a roommate who was on parole, and two of the children's maternal aunts lived in the territory of the gang against whom father had cooperated with law enforcement and were unwilling to relocate. The Department had located an out-of-state family willing to adopt all four children, but the family withdrew its request after learning that there had been no termination of parental rights. Immediately before the hearing, the Department located another family interested in adopting all four children.

3

After considering this evidence as well as the Department's assessment and recommendation that the children were adoptable, the juvenile court found "by clear and convincing evidence that the children are adoptable." The court determined that the children were a "sibling group" and recommended that they "continue to be placed jointly." The court accordingly terminated mother's and father's parental rights.

Mother appealed; father did not.

## DISCUSSION

After a juvenile court concludes that efforts at reunification have failed, it may choose among several options going forward. (§ 366.26, subd. (b).) The preferred option is to terminate the parents' rights and place the dependent child(ren) up for adoption. (*Id.*, subd. (b)(1).) However, a juvenile court may select this option only if, after considering the Department's assessment, it (1) finds, "by [] clear and convincing [evidence], that it is likely the child will be adopted" (*id.*, subd. (c)(1); see also *In re Zeth S.* (2003) 31 Cal.4th 396, 406 (*Zeth S.*) [requiring "clear and convincing evidence that adoption will be realized within a reasonable time"], and (2) determines that there is no "relative" willing to be a legal guardian and that none of six statutory exceptions apply (§ 366.26, subds. (c)(1)(A) & (c)(1)(B); *In re B.D.* (2008) 159 Cal.App.4th 1218, 1231 (*B.D.*) [so noting]). (See generally *In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 [noting that the assessment report is "a cornerstone of the evidentiary structure"].) Of course, the juvenile court's overarching concern is the "best interests of the child." (§ 366.26, subd. (h)(1).)

Mother challenges only the first of these requirements, arguing that there was insufficient evidence that her children are adoptable. We review a juvenile court's finding that a child is likely to be adopted for substantial evidence. (*B.D.*, *supra*, 159 Cal.App.4th at p. 1232.) In conducting this review, "we presume in favor of the order, considering the evidence in the light most favorable to" that order, and draw all inferences and resolve all evidentiary conflicts "in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) Although the juvenile court must make its finding

4

of adoptability by clear and convincing evidence, "on appeal . . . the clear and convincing test disappears and 'the usual rule of conflicting evidence is applied.'" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526 (*I.W.*).) A "social worker's conclusion alone is insufficient to support a finding of adoptability." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 514 (*Asia L.*).)

The juvenile court's focus is on the *likelihood* of adoption. Adoption of the children must be more than a *possibility* (*In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223), but less than a *certainty* (§ 366.26, subd. (c)(1) ["[t]he fact that a child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted"]; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1659 (*Sarah M.*) ["it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings'"]). Should this likelihood not bear out in three years, the court retains the power to reinstate parental rights. (§ 366.26, subd. (i)(3).)

Informally, juvenile courts have approached the question of whether this likelihood exists by asking two questions: (1) is the child "generally adoptable?"; or (2) is the child "specifically adoptable?" Either type of adoptability suffices, and a court need not make an express finding as to either one. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313 (*A.A.*).)

A child is generally adoptable as long as his or her age, physical condition, emotional state, or developmental condition does not "make it difficult to find a person willing to adopt the minor." (*Sarah M.*, *supra*, 22 Cal.App.4th at p. 1649; *In re Marina S.* (2005) 132 Cal.App.4th 158, 165; *Asia L.*, *supra*, 107 Cal.App.4th at p. 510; cf. *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1562 ["(a)] child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability"].) The focus of this inquiry is on the "adoptability of the child *as an individual*." (*In re I.I.* (2008) 168 Cal.App.4th 857,

872 (*I.I.*), italics added; see also, e.g., *Zeth S.*, *supra*, 31 Cal.4th at p. 406 ["focus[] [is] on *the minor*"], italics added; *A.A.*, *supra*, 167 Cal.App.4th at p. 1311 ["focus[] [is] on *the dependent child*], italics added; *In re Valerie W.* (2008) 162 Cal.App.4th 1, 13 (*Valerie W.*) [focus is on the child]; *In re R.C.* (2008) 169 Cal.App.4th 486, 493 (*R.C.*) [same].) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the children are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family.*" (*Sarah M.*, at pp. 1649-1650.) If a child is found to be generally adoptable, "the availability of prospective adoptive parents" is "irrelevant" and there is no need for the court to inquire into the suitability of a particular placement. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061-1062 (*Carl R.*); *A.A.*, at p. 1313.)

Where a minor is not considered to be generally adoptable due to his or her "'age, poor physical health, physical disability, or emotional instability'" (*I.W.*, *supra*, 180 Cal.App.4th at pp. 1526-1527), the juvenile court may nevertheless find the child to be "specifically" adoptable "because a prospective adoptive family has been identified as willing to adopt the child" (*Sarah M.*, *supra*, 22 Cal.App.4th at p. 1650). Because the identified family's interest is what makes it likely that such a child will be adopted, the juvenile court evaluating "specific" adoptability looks to whether there are any "legal impediments" to the identified family's adoption, to the suitability of that family, and to the child's wishes vis-a-vis adoption by that family. (See *ibid.*; *In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1410; *Carl R.*, *supra*, 128 Cal.App.4th at p. 1061; *B.D.*, *supra*, 159 Cal.App.4th at p. 1232.) Further, because the likelihood of adoptability notwithstanding the child's special issues is keyed to the identified family's interest, that family's interest cannot support a finding that other families will be likely to adopt because those other families may not be interested in a "specialized placement." (*Asia L.*,

6

*supra*, 107 Cal.App.4th at p. 512; *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1205 (*Jerome D.*).)

Whether a juvenile court looks to a child's general adoptability or instead to his or her specific adoptability turns, aside from age, on the degree to which the child suffers from special physical, emotional or developmental challenges. Physical ailments that render a child not generally adoptable include neurological problems (*In re Jeremy S.* (2001) 89 Cal.App.4th 514, 525, overruled on other grounds in *Zeth S.*, *supra*, 31 Cal.4th 396; *Valerie W.*, *supra*, 162 Cal.App.4th at p. 14), genetic disorders (*Valerie W.*, at p. 14), or having a prosthetic eye (*Jerome D.*, *supra*, 84 Cal.App.4th at p. 1205); it does not include prenatal exposure to narcotics (*R.C.*, *supra*, 169 Cal.App.4th at p. 493). Emotional and behavioral challenges that render a child not generally adoptable include post-traumatic stress disorder (*I.W.*, *supra*, 180 Cal.App.4th at p. 1525); hyperactivity necessitating medication (*Asia L.*, *supra*, 107 Cal.App.4th at pp. 510-512); and strong emotional attachment to a birth parent (*I.W.*, at p. 1525; *Jerome D.*, at p. 1205); it does not include typical sibling in-fighting and rivalry (*A.A.*, *supra*, 167 Cal.App.4th at p. 1312). Developmental disabilities that render a child not generally adoptable include having a "complete[]" or serious developmental disability (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1062; *In re Amelia S.* (1991) 229 Cal.App.3d 1060, 1063) and being developmentally behind on several fronts (*In re Brian P.* (2002) 99 Cal.App.4th 616, 625 [inability to dress, speak, or walk].) That a child has suffered from a particular challenge in the past does not preclude that child from being generally adoptable if that challenge has been addressed. (*A.A.*, at p. 1312.)

The juvenile court in this case did not specify whether the four children were generally or specifically adoptable, but substantial evidence supports a finding that they are generally adoptable. The children ranged from ages 3 to 7 at the time of the October 2015 hearing; this is relatively young, so their ages are not an impediment to adoption. All are in good physical health. Only Adam and L. had any behavioral or emotional issues, and each had resolved those issues by the time of the hearing. Anthony was still

attending speech therapy, but given his young age (three) and the absence of any evidence that this developmental delay was significant, this does not take him out of the realm of general adoptability.  Anthony and, by mimicry, L., were having issues using bathrooms away from home, but there is evidence to suggest this was related to visiting father in jail; in any event, this does not rise to the level of any of the impediments previously found to render a child not "generally adoptable."  Additionally, the juvenile court had evidence that several families had expressed interested in adopting all four siblings; although all but one were disqualified from doing so (the out-of-state family withdrew its request after learning that parental rights had not yet been terminated), the disqualifications had nothing to do with the adoptability of the children.  More to the point, the willingness of these families to adopt these kids buttresses the conclusion that the children are generally adoptable.  (See, e.g., *Sarah M.*, *supra*, 22 Cal.App.4th at pp. 1649-1650.)

Mother raises four arguments.  First, she argues that the juvenile court's order that the children be adopted as a "sibling group" precludes them from being generally adoptable.  We disagree.  To begin, whether a child is part of a sibling group is not relevant to whether he or she is general adoptable because the inquiry into adoptability focuses on *the individual child*.  (*I.I.*, *supra*, 168 Cal.App.4th at pp. 871-872 & fn.3.)  To be sure, *B.D.* contains language that suggests to the contrary (*B.D.*, *supra*, 159 Cal.App.4th at p. 1233 [discussing sibling group of five in assessing whether the children in that case were generally and specifically adoptable]), and section 366.26, subdivision (c)(3) specifies that a child may be found to be "difficult to place" due to "the child's membership in a sibling group."  (§ 366.26, subd. (c)(3).)  But *B.D.'s* language arose in the context of a case about specific adoptability:  Two of the children in that case had behavioral problems rising to the level of developmental delay, and a third had a major depressive disorder.  (*B.D.*, at p. 1223.)  *B.D.* is also inconsistent with the legion of cases, cited above, that look to the *individual* child's adoptability.  And section 366.26, subdivision (c)(3) addresses the juvenile court's power to identify adoption as a goal but

8

to delay the termination of parental rights for a 180-day period; it applies only *after* the court has found that "the child has a probability for adoption." (§ 366.26, subd. (c)(3); *I.I.*, at p. 872 [distinguishing section 366.26, subdivision (c)(3) on this basis].) In any event, even if we took into consideration the juvenile court's designation of the four siblings as a sibling group, the number of families who have expressed interest in adopting them as a group is substantial evidence that they remain generally adoptable even as a group. We reject mother's implicit suggestion that a sibling group of four is, without more, not generally adoptable.

Second, mother contends that *B.D.*, *supra*, 159 Cal.App.4th 1218 dictates a finding that the juvenile court erred. Three of the five members of the sibling group in *B.D.* were, as individuals, not generally adoptable; *B.D.* is about *specific* adoptability and is in no sense inconsistent with the general adoptability of the children in this case.

Third, mother asserts that there is no need to terminate her parental rights in favor of adoption when the children were well adjusted in the home of the foster mother and a guardianship could have sufficed. This ignores the "'strong preference for adoption over the alternative permanency plans,'" including legal guardianship. (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395, quoting *In re S.B.* (2008) 164 Cal.App.4th 289, 297.)

Lastly, mother argues that there were numerous legal impediments to the adoption of the children by the potential adoptive family identified right before the October 2015 hearing. This might be a concern were the children only specifically adoptable. However, because there is substantial evidence that they are generally adoptable, "the availability of prospective adoptive parents" is, as noted above, "irrelevant." (*Carl R.*, *supra*, 128 Cal.App.4th at pp. 1061-1062.)

9

**DISPOSITION**

The order of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>



_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ