[No. D052698. Fourth Dist., Div. One. Dec. 19, 2008.]

In re R.C., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
PATRICIA C., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica B. Gardner, Deputy County Counsel, for Plaintiff and Respondent.

Susan Bookout, under appointment by the Court of Appeal, for Minor.

OPINION

**IRION, J.**—Patricia C. appeals a juvenile court judgment terminating her parental rights to her minor son R.C. under Welfare and Institutions Code section 366.26.[1] Patricia contends the court erred by summarily denying her section 388 petition for modification seeking further reunification services or placement of R.C. with her. She also challenges the sufficiency of the evidence to support the court's findings R.C. is adoptable and the beneficial parent-child relationship exception of section 366.26, subdivision (c)(1)(B)(i) does not apply to preclude terminating parental rights. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2007 one-month-old R.C. became a dependent of the juvenile court under section 300, subdivision (b) and was removed from parental custody based on findings Patricia used heroin while pregnant with R.C., and

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

he was experiencing symptoms of drug exposure. The court placed R.C. in foster care and ordered reunification services for Patricia, including individual therapy, parenting education, substance abuse treatment and a psychological evaluation. The court also ordered Patricia to participate in the Substance Abuse Recovery Management System program.

During the next six months, Patricia's whereabouts were often unknown. Patricia did not participate in individual counseling or parenting classes. She enrolled in several drug rehabilitation programs, but did not remain in any of them. For the first few months of reunification, Patricia had supervised visits with R.C. three to four times a week. During some visits, Patricia did not interact much with R.C., and had to be told to read and talk to him. During other visits, she kissed and fed R.C. and changed his diapers. She stopped visiting R.C. when she moved to Virginia.

At the six-month review hearing, the court found reasonable services had been offered to Patricia, but she had not made substantive progress with the provisions of her case plan and there was no substantial probability R.C. would be returned to Patricia in the next six months. The court terminated services and set a section 366.26 selection and implementation hearing.

Patricia filed a section 388 petition for modification, seeking to have the court place R.C. with her, or alternatively, order six more months of services. As changed circumstances, Patricia alleged she had completed programs while incarcerated in Virginia. Patricia further alleged the requested modification was in R.C.'s best interests because it would allow him to continue bonding with her. The court summarily denied the petition, finding Patricia did not make a prima facie showing of changed circumstances or best interests.

In an assessment report, the San Diego County Health and Human Services Agency (Agency) recommended adoption as R.C.'s permanent plan. Social worker Paul Ruegg noted R.C. was adoptable because he was a cute, healthy and happy 11-month-old boy with a great disposition. There were many families willing to adopt a child with his characteristics. R.C. was developmentally on target and was scheduled to have a complete evaluation the following month.

Additionally, R.C.'s current caregivers were committed to adopting him. R.C. had lived with these caregivers since he was a few days old, and he looked to them as his parents. The caregivers were a mother and her adult daughter living in the same home, who had adopted a child with special

needs and also had other foster children. Although there was a recent investigation regarding discipline of one of the children in the home, the caregivers were open and honest about the incident and none of the children were removed. The caregivers knew and loved R.C. and were meeting all his needs.

In Ruegg's opinion, the relationship Patricia had with R.C. was not parental. Ruegg believed terminating Patricia's parental rights would not be detrimental to R.C.

At a contested selection and implementation hearing, Patricia testified she was willing to do whatever was necessary to have R.C. back in her life. She had been incarcerated for five months after surrendering on outstanding warrants. While in jail, she participated in various programs, including one that addressed drug addiction. She asked the court to order a permanent plan other than adoption for R.C.

The court asked Agency to briefly reopen its case to clarify information about the "many adoptive families" available for R.C. When Ruegg indicated he did not inquire as to the specific number of available adoptive families, the court ordered a brief recess to allow Ruegg to obtain that information. Ruegg then spoke to Agency's adoption placement coordinator, who informed him that based on R.C.'s characteristics, including age, ethnicity, in utero drug exposure and lack of identified father, there were 43 approved prospective adoptive families for R.C.

After considering the evidence and hearing argument of counsel, the court found R.C. was likely to be adopted and none of the circumstances of section 366.26, subdivision (c)(1) applied to preclude terminating parental rights.

## DISCUSSION

### I[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

Patricia challenges the sufficiency of the evidence to support the court's finding R.C. is adoptable. She asserts (1) R.C. is not generally adoptable based on his drug exposure, speech delays and the lack of information about his paternity; (2) the evidence as to prospective adoptive families was

---

[*]See footnote, *ante*, page 486.

unreliable and inadmissible; and (3) there are legal impediments to the caregivers' ability to adopt R.C.

## A

When reviewing a court's finding a minor is adoptable, we apply the substantial evidence test. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732 [131 Cal.Rptr.2d 92]; *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154 [94 Cal.Rptr.2d 693].) If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we must uphold those findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [82 Cal.Rptr.2d 426]; *In re B.D.* (2008) 159 Cal.App.4th 1218, 1232 [72 Cal.Rptr.3d 153].) Rather, our task is to determine whether there is substantial evidence from which a reasonable trier of fact could find, by clear and convincing evidence, that the minor is adoptable. (*In re Marina S.* (2005) 132 Cal.App.4th 158, 165 [33 Cal.Rptr.3d 220].) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947 [124 Cal.Rptr.2d 688].)

The court may terminate parental rights only if it determines by clear and convincing evidence the minor is likely to be adopted. (§ 366.26, subd. (c)(1).) The statute requires clear and convincing evidence of the likelihood adoption will be realized within a reasonable time. (*In re Zeth S.* (2003) 31 Cal.4th 396, 406 [2 Cal.Rptr.3d 683, 73 P.3d 541]; *In re B.D., supra,* 159 Cal.App.4th at p. 1231.) In determining adoptability, the focus is on whether a child's age, physical condition and emotional state will create difficulty in locating a family willing to adopt. (§ 366.22, subd. (b)(3); *In re David H.* (1995) 33 Cal.App.4th 368, 378 [39 Cal.Rptr.2d 313].) To be considered adoptable, a minor need not be in a prospective adoptive home and there need not be a prospective adoptive parent " 'waiting in the wings.' " (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 [28 Cal.Rptr.2d 82].) Nevertheless, "the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*Id.* at pp. 1649–1650.)

B

■ Substantial evidence supports the juvenile court's finding R.C. is generally adoptable. Although R.C. experienced symptoms of drug exposure at birth, he completed six weeks of treatment and began to grow and develop into a beautiful, happy and healthy baby. His positive characteristics make him adoptable despite his in utero exposure to heroin, slight speech delays and the absence of an identified father. (Cf. *In re Carl R.* (2005) 128 Cal.App.4th 1051, 1062 [27 Cal.Rptr.3d 612] [minor was not generally adoptable because he was completely developmentally disabled and required total care for life].) The possibility R.C. may have future problems does not preclude a finding he is likely to be adopted. (*In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223–225 [4 Cal.Rptr.2d 101]; see also *In re Helen W.* (2007) 150 Cal.App.4th 71, 79 [57 Cal.Rptr.3d 914] [certainty of child's future medical condition not necessary to find general adoptability].) R.C.'s caregivers are aware of his challenges and nevertheless remain committed to adopting him. From this, a reasonable inference can be drawn that R.C.'s age, physical and emotional condition and other personal attributes are not likely to dissuade individuals from adopting him. (*In re Sarah M., supra,* 22 Cal.App.4th at p. 1651.)

C

In determining R.C.'s adoptability, the court asked social worker Ruegg to verify the existence and number of prospective adoptive families available for R.C. Ruegg, after inquiring of Agency's adoption placement coordinator, testified there were 43 families available to adopt a child with R.C.'s characteristics. Patricia claims this evidence, obtained telephonically during a brief recess in the proceedings, was unreliable, inadmissible and violated the 10-day notice rule of section 366.21, subdivision (c).

Patricia did not object when the court asked Agency to clarify its position with respect to the specific number of available adoptive families, nor did she object to the introduction of Ruegg's testimony on grounds it was unreliable or inadmissible hearsay. "[A] parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338 [63 Cal.Rptr.2d 562].) This so-called forfeiture rule applies because "the parent bears the responsibility to care for his or her own interests by asking the court to exercise its discretion in a manner favorable to the parent. In such circumstances, the courts have not permitted the silent parent to argue that the juvenile court erred in not being psychic." (*Id.* at p. 1339; see also *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746] [purpose of forfeiture rule is to encourage parties to bring errors to attention of trial court

so they may be corrected].) Moreover, although Patricia claims she did not have a meaningful opportunity to review the content of Ruegg's oral report in violation of the 10-day rule, she objected to a continuance that would have allowed her to do so. Consequently, Patricia cannot assert the error as grounds for reversal on appeal. (See *In re Jamie R.* (2001) 90 Cal.App.4th 766, 772 [109 Cal.Rptr.2d 123] [doctrine of invited error applies where party, for tactical reasons, persuades court to follow a particular procedure].) Even if Patricia could now raise these claims, the court was entitled to consider evidence about potential adoptive families in finding Agency met its burden of showing, by clear and convincing evidence, that R.C. was likely to be adopted within a reasonable time. (*In re Zeth S., supra*, 31 Cal.4th at p. 406; *In re Chantal S.* (1996) 13 Cal.4th 196, 210 [51 Cal.Rptr.2d 866, 913 P.2d 1075].)

D

Patricia contends the evidence was insufficient to support a finding R.C. is "specifically" adoptable. In her opening brief, she asserts there were two legal impediments to the caregivers' ability to adopt: the absence of an approved home study and a pending investigation about the use of physical discipline used on the caregivers' adopted child.[2] In her reply brief, Patricia argues R.C.'s caregivers are a mother and her adult daughter who may not be legally able to coadopt.[3]

■ In finding R.C. is likely to be adopted within a reasonable time, the court relied on evidence he is both generally adoptable based on his characteristics and specifically adoptable because his caregivers want to adopt him. As we have concluded, substantial evidence supports the court's finding of general adoptability. For a minor like R.C., who is adoptable based on factors in addition to a caregiver's willingness to adopt, the suitability or availability of the caregiver to adopt is not a relevant inquiry. (*In re Sarah M.,*

---

[2] We note Patricia did not raise these or other concerns about legal impediments to the caregivers' ability to adopt R.C. Thus, she has failed to properly preserve them for appeal. (*In re S.B., supra*, 32 Cal.4th at p. 1293; *In re Brian P.* (2002) 99 Cal.App.4th 616, 623 [121 Cal.Rptr.2d 326].)

[3] We ordinarily do not consider points raised for the first time in a reply brief because they deprive the respondent of the opportunity to counter the argument. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432]; *In re Tiffany Y.* (1990) 223 Cal.App.3d 298, 302 [272 Cal.Rptr. 733].) However, at the court's request, the parties have submitted supplemental briefing to address Patricia's belated claim. Specifically, we asked the parties to address the following: (1) Is the issue of whether R.C.'s caregivers can jointly adopt him ripe for review in the context of these proceedings; (2) If so, does the caregivers' relationship as mother and adult daughter create a legal impediment to adoption; and (3) Is the analysis altered by the juvenile court's finding that R.C. is both generally and specifically adoptable?

*supra*, 22 Cal.App.4th at p. 1650; *In re Carl R., supra*, 128 Cal.App.4th at p. 1061; *In re T.S.* (2003) 113 Cal.App.4th 1323, 1329 [7 Cal.Rptr.3d 173].)[4] Rather, a caregiver's willingness to adopt serves as further evidence the minor is likely to be adopted within a reasonable time either by the caregiver *"or by some other family."* (*In re Sarah M.*, at p. 1650.) A selection and implementation hearing does not provide a forum for a parent to contest the "suitability" of a prospective adoptive family as long as the minor is generally adoptable. (*Id.* at pp. 1649–1650.) "[T]he question of a family's suitability to adopt is an issue which is reserved for the subsequent adoption proceeding." (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844 [16 Cal.Rptr.2d 766]; see also *In re Diana G.* (1992) 10 Cal.App.4th 1468, 1481–1482 [13 Cal.Rptr.2d 645] [selection and implementation hearing is merely preliminary step to adoption by appropriate agency].)

In some situations, not applicable here, a minor who is not generally adoptable because of age, poor physical health, physical disability or emotional instability may nevertheless be adoptable because a prospective adoptive family has been identified as willing to adopt the child. (*In re Sarah M., supra*, 22 Cal.App.4th at p. 1650.) "When a child is deemed adoptable *only* because a particular caretaker is willing to adopt, the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child." (*In re Helen W., supra*, 150 Cal.App.4th at p. 80, italics added; see *In re Carl R., supra*, 128 Cal.App.4th at p. 1061; *In re Valerie W.* (2008) 162 Cal.App.4th 1, 15 [75 Cal.Rptr.3d 86].) This is not such a case. R.C. is adoptable generally, not just because one family is willing to adopt him. Because the court's alternative finding R.C. is specifically adoptable by his caregivers was not essential to its decision, the court was not required to determine whether there was a legal impediment to adoption by the caregivers. (*In re B.D., supra*, 159 Cal.App.4th at p. 1232; *In re Scott M., supra*, 13 Cal.App.4th at p. 844; *In re Sarah M.*, at p. 1651.)

Having concluded substantial evidence supports the court's finding R.C. is generally adoptable, we have no opportunity to decide whether there are any legal impediments to adoption presented by the caregivers, a mother and her adult daughter, with whom R.C. will likely be placed for adoption. This issue will be justiciable *if* Agency approves the caregivers' home study and *when* the court is presented with the caregivers' joint adoption petition. Thus, the determination as to the propriety of R.C.'s eventual adoption "remains to be made subject to the governing law. (§§ 366.26, subds. (e), (j), & (k), 366.3, subd. (a); Fam. Code, §§ 8714–8720; and Cal. Rules of Court, [former] rule

---

[4] In response to our request for supplemental briefing, Patricia concedes that if the evidence supports a finding R.C. is generally adoptable, the suitability of the caregivers to adopt is not a proper consideration at the selection and implementation hearing.

1466(a).)" (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1998) 62 Cal.App.4th 1, 12 [72 Cal.Rptr.2d 369].)

Where, as here, parental rights are terminated, the State Department of Social Services (DSS) obtains exclusive control, custody and supervision of a child referred for adoptive placement. (§ 366.26, subd. (j); Fam. Code, § 8704, subd. (a); *Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 733 [68 Cal.Rptr.2d 239]; *In re Shirley K.* (2006) 140 Cal.App.4th 65, 71 [43 Cal.Rptr.3d 897].) Although DSS "has been given the resources for investigation and evaluation of the placement decision," its discretion with respect to adoptive placements is not unfettered. (*In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397–1398 [114 Cal.Rptr.2d 46].) Rather, the juvenile court's role is to review whether DSS "abused its discretion in placing the minor or in determining that the placement, once made, remains appropriate." (*Department of Social Services v. Superior Court,* at p. 734; see also *In re Jacob E.* (2004) 121 Cal.App.4th 909, 922 [18 Cal.Rptr.3d 15].) Accordingly, the court can overrule DSS's "placement decision if it is patently absurd or unquestionably not in the minor's best interest." (*In re Harry N.,* at p. 1397, fn. 20.) It is in this context that the legality and suitability of an adoptive placement for a generally adoptable minor can be appropriately challenged.

Although Patricia will not be a party to any subsequent proceedings regarding R.C. because her parental rights are terminated (§ 366.3, subd. (a)), the juvenile court will retain jurisdiction over R.C. to determine the appropriateness of his adoptive placement and ensure his adoption is completed as expeditiously as possible and is in his best interests. (*In re Shirley K., supra,* 140 Cal.App.4th at p. 72 [juvenile court must assess Agency's posttermination placement by considering minor's best interests]; Fam. Code, § 8612, subd. (c).) Minor's counsel, who is charged with representing R.C.'s interests at all subsequent proceedings before the juvenile court (§ 317, subds. (c), (d), (e)), must also ensure the propriety and legality of any adoption.[5] (See § 366.3, subds. (a), (f).) Through these procedures and safeguards, the issue of whether the caregivers can legally adopt R.C. will not evade review.

III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] Additionally, "[w]ith the consent of the agency, the court may appoint a guardian of the child, who shall serve until the child is adopted." (§ 366.26, subd. (j).)

[*]See footnote, *ante,* page 486.

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and Aaron, J., concurred.