Filed 6/30/16  In re Shelby K. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SHELBY K. et al., Persons Coming Under the Juvenile Court Law. | |
| TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MELISSA O.,<br><br>Defendant and Appellant. | F073049<br><br>(Tuolumne Super. Ct. Nos. JV7600 & JV7601)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Sarah Carrillo, County Counsel, and Cody M. Nesper, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In April 2015, Melissa O. (Mother) was found in the street with her two children: Caden O. and Shelby K.  At the time, Caden O. was 13 months old and Shelby was seven years old.  Caden was naked and shivering, and Shelby was in dirty pajamas and no shoes.  Shelby said the family had not eaten for days.

Mother was placed on an involuntary psychiatric hold, and the two children were placed in foster care.  Eventually, Mother's parental rights were terminated.  Mother challenges that result on the grounds that the juvenile court's determination that the children were adoptable lacked substantial evidence.  We disagree and affirm.

## BACKGROUND

Mother's sole argument on appeal is that the trial court's finding the children were adoptable was not supported by substantial evidence.  Consequently, our recitation of the facts focuses on the evidence pertinent to that issue.  (Cf. *Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1157.)  In this background section, we briefly discuss the circumstances that led to the dependency.  We discuss the evidence concerning the substantive issue on appeal in the subsequent "Analysis" section.

Dependency Petitions

On April 8, 2015, the Tuolumne County Department of Social Services (Department) filed dependency petitions concerning children Caden O. and Shelby K. (See Welf. & Inst. Code, § 300.)[1]  Caden was 13 months old at the time, and Shelby was 7 years old.  The petitions alleged that on April 4, 2015, the San Jose Police Department responded to a call that Mother was seen on a street with Caden, who was naked and shivering, and Shelby, who was in dirty pajamas and without shoes.  Shelby told the responding officer that the family had not eaten in several days, Caden had not had

_____

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise stated.

diapers for more than a week, and the family was staying in an abandoned building. Law enforcement placed Mother on an involuntary psychiatric hold and the children were placed into protective custody. Mother was released the next day. She called Santa Clara Child Protective Services asking where her children were.

Shelby's Interview on April 6, 2015

On April 6, 2015, a social worker spoke with Shelby. Shelby said that on March 28, 2015, Mother had rented a vehicle and driven them to San Jose to meet with her attorney. One day Shelby fell asleep in the car, and when she awoke the vehicle was gone, and the three of them were on the sidewalk. The family's clothes " 'disappeared' with the rental vehicle."

Shelby remembered sleeping in a hotel one night and a small garage on other nights. The garage was "freezing." It had no beds and a single "little tiny blanket," which the family shared. The family had "some snacks including Cheez-it crackers and graham crackers," but they were very hungry. Shelby's "tummy hurted and it didn't feel comfortable." When asked what she wanted help with, Shelby said, "[H]elp give us shelter, feed us, and take care of us." Shelby recalled that Mother would "lay down and sleep a lot" but would awaken when Shelby tried to wake her up. Mother would sometimes take "medicine," but Shelby did not know its purpose.

Mother's Interview on April 13, 2015

Mother was interviewed on April 13, 2015. During the interview, Mother could not "hold a linear conversation." Mother said she had traveled to San Jose to meet with her attorney because her car and identity had been stolen. Mother said her attorney was not in his office when she arrived. She said she spoke with someone on the phone claiming to be her attorney but she "believe[d] that it was not him and that he is 'part of this.' " The social worker asked Mother what she meant. She said that her ex-husband Richard K. and ex-boyfriend Conan S. kidnapped her and tried to sell her children.

3.

Richard K. and Conan S. sold her to strange men that had done "horrible sexual things to her."

Mother said that she had been staying in an abandoned building with her children. However, men were assaulting her there, so she escaped on April 4, 2015. Police officers transported her to a hospital where no one would listen to her story. A woman picked her up from the hospital and transported her to a homeless shelter where she was again assaulted by the men from the abandoned building.[2]

During the interview, Mother offered conflicting information on who fathered Caden.

Disposition Report

According to the disposition report, Mother's parental rights to another child – Logan P. – were terminated in January 2007. Mother had been pulled over for erratic driving and methamphetamine use. In the dependency case that ensued, Mother failed to participate in family reunification services.

The disposition report also contained a summary of information provided by Mother herself. The information was initially provided to social workers in 2010 and was "update[d]" in 2015.

Mother described her long history of drug use. Mother began smoking marijuana at age 14 and began using methamphetamine at age 21. Eventually, she became a heavy methamphetamine user. On July 27, 2015, Mother said she completed a drug program and had not used methamphetamine since.

Summary of Court Proceedings

On April 9, 2015, a detention hearing was held. Mother was not present at the hearing, and the children were ordered detained in foster care.

---

[2] Mother recounted these events – with some inconsistencies – in another interview on April 17, 2015, and during her testimony at the jurisdictional hearing.

On May 1, 2015, the children were placed with Sheila D., who is Shelby's paternal aunt. Though Sheila D. is not biologically related to Caden, she was "willing to have placement of [both] children long term" and was specifically interested in adoption.

On July 22, 2015, a contested jurisdictional hearing was held. The court concluded the children fell under the court's jurisdiction pursuant to subdivisions (b), (g), and (j) of section 300.

On June 16, 2015, the dispositional hearing was held. The court denied reunification services and set a section 366.26 hearing.

The Department submitted a section 366.26 report, the contents of which are discussed below. After the section 366.26 hearing on December 22, 2015, the court found "[t]here is clear and convincing evidence that it is likely the child[ren] will be adopted" and terminated Mother's parental rights.

Mother appealed.

## ANALYSIS

### I.   Law

Mother contends the juvenile court's findings that the children were likely to be adopted were not supported by substantial evidence.

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. [Citations.]" (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061 (*Carl R.*); see § 366.26, subd. (c)(1).)

"The question of adoptability posed at a section 366.26 hearing usually focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt that child. [Citation.]" (*In re Carl R.*, *supra*, 128 Cal.App.4th at p. 1061.) This is often referred to as "general adoptability."

5.

When a child is generally adoptable, "the availability of prospective adoptive parents [is] irrelevant to the adoptability findings. [Citations.]" (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1062; see *In re R.C.* (2008) 169 Cal.App.4th 486, 493–494.)

"However, where the child is deemed adoptable based solely on the fact that a particular family is willing to adopt him or her, the trial court must determine whether there is a legal impediment to adoption. [Citation.]" (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1061.) When a child is deemed adoptable *solely* because a particular family is willing to adopt him or her, the child is "specifically adoptable."

We review the juvenile court's determination of adoptability for substantial evidence. (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1061.) We conclude substantial evidence exists here.

a.      Adoptability Evidence Concerning

The Department prepared and submitted to the court a section 366.26 report concerning the children.

*1. Shelby*

The report observed that Shelby was "developmentally on track" but did have to repeat the second grade because she had difficulty with math and language arts.

She was well-adjusted to foster care and enjoyed horseback riding, playing with her cousins and taking care of animals. Shelby goes to counseling one day per week.

In 2015, she was treated for a bacterial infection caused by a cat scratch. No other medical concerns were noted.

*2. Caden*

With respect to Caden, the report observed, "There do not appear to be mental or emotional issues to address at this time. Overall, Caden is a happy toddler, who is well bonded to his caregivers and relatives. Caden enjoys all the animals on the ranch. He looks up to his big sister, Shelby, and tries to follow her everywhere she goes."

Caden "appear[ed] to be lacking in the area of verbal communication skills," and was referred for possible speech therapy. On December 1, 2015, the caregiver reported that Caden had begun talking.

No medical concerns were noted with respect to Caden.

b. The Juvenile Court's Finding was Supported by Substantial Evidence

These observations of Caden and Shelby constitute substantial evidence that they are both adoptable. Both children displayed an ability to interact well with other children and adults. Neither child had physical or emotional conditions that were so substantial they might affect their adoptability. (See *Carl R.*, *supra*, 128 Cal.App.4th at p. 1061 ["question of adoptability … focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt that child"].) That Shelby was seeing a therapist weekly does not establish that she had any specific, substantial emotional condition that would "make it difficult to find a person willing to adopt" (*ibid.*) her. Nor does Caden's speech delay warrant reversal of the adoptability finding. (See *In re R.C.*, *supra*, 169 Cal.App.4th at p. 492 [child was adoptable despite slight speech delays].)

Mother implies that the fact that Caden and Shelby were a sibling set lessened their adoptability. While we assume it is easier to place a single child into an adoptive home than it is to place two siblings in the same adoptive home, that conclusion does not warrant overturning the adoptability finding here. We decline to hold that a child is not generally adoptable merely because he or she has a single sibling.

Nor does Shelby's age render her generally unadoptable. While younger children may be easier to place in an adoptive home, we reject the notion that second-graders are not generally adoptable.

c. Cases Relied on by Mother are Distinguishable

Mother argues that the social worker's analysis of adoptability in this case was less thorough than other cases where adoptability findings have been upheld. (See *In re*

*Gregory A.* (2005) 126 Cal.App.4th 1554 (*Gregory A.*); *In re Erik P.* (2002) 104 Cal.App.4th 395 (*Erik P.*).) !(AOB 20-21)! However, the in-depth analyses in the cases cited by Mother were warranted by the specific physical or mental conditions present.

In *Erik P.*, the child was born prematurely, causing hypertonia (i.e., "increased tightness of muscle tone"). (*Erik P.*, *supra*, 104 Cal.App.4th at p. 400.) The appellate court upheld the adoptability finding amidst evidence that hypertonia is treatable with physical therapy, and that the child's adoptive mother "had been doing exercises with him and Erik was already showing improvement." (*Ibid.*) Moreover, "Erik was also sleeping and eating well and looked like a healthy child." (*Ibid.*) In other words, the in-depth information in *Erik P.* was offered to show that a particular physical condition was not so significant as to render the child generally unadoptable.

Similarly, the child in *Gregory A.* had ADHD. The record showed that the child's ADHD "was being addressed through therapy and the possible administration of medication, and had no effect on his personal relationships or his behavior outside school." (*Gregory A.*, *supra*, 126 Cal.App.4th at p. 1563.) Again, this detailed information was offered to show that a specific condition was not so significant as to render the child generally unadoptable.

If Caden or Shelby had a significant physical, emotional or developmental condition that went unexplained, perhaps we would find the section 366.26 report insufficient. (See *In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1205 [child's assessment did not consider child's prosthetic eye "which apparently required care and treatment"].) However, unlike *Gregory A.* and *Erik P.*, the children in this case have no serious physical or developmental conditions warranting additional information. The relatively minor issues that are present – Shelby's struggles with language arts and math, and Caden's speech delay – are adequately identified and described.

8.

d.     That Sheila D. was Willing to Adopt Children Also Supported Adoptability Finding

"Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*. [Citation.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649–1650, italics in original.)

Here, Sheila D. expressed interest in adopting both children. This fact raises an inference that the children were likely to be adopted – whether by Sheila D. or another family. (See *In re Sarah M.*, *supra*, 22 Cal.App.4th at pp. 1649–1650.)

e.     Mother's Arguments Concerning Specific Adoptability are Irrelevant

Mother argues that the juvenile court's finding was improper absent evidence of when the adoption of Caden and Shelby would be initiated. Mother also notes that there was no indication of when the foster parents would begin the home study process. Finally, mother contends that there was no "specific prospective adoptive placement" in this case.

These contentions all concern specific adoptability. However, as discussed, *ante*, there was substantial evidence that the children were *generally* adoptable. These contentions, therefore, are irrelevant. Since the children were generally adoptable, "the availability of prospective adoptive parents [is] irrelevant …." (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1062; see *In re R.C.*, *supra*, 169 Cal.App.4th at pp. 493–494.)

f.     The Juvenile Court was not Required to Continue the Section 366.26 Hearing Under Subdivision (c)(3)

Mother also argues that the court should have continued the section 366.26 hearing for 180 days pursuant to section 366.26, subdivision(c)(3). However, that

9.

subdivision only applies when "the child has a probability for adoption *but is difficult to place for adoption*." (§ 366.26, subd. (c)(3), italics added.) The evidence concerning Shelby and Caden does not indicate that they are "difficult to place for adoption." (§ 366.26, subd. (c)(3).) Consequently, the 180-day continuance described in that provision is inapplicable.

## DISPOSITION

The orders are affirmed.


_____
POOCHIGIAN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
PEÑA, J.

10.