Filed 3/29/21  In re S.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  G.S. et al.,  Defendants and Appellants. | D078027  (Super. Ct. No. NJ15434B-E) |

1

APPEAL from orders of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant G.S.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant E.S.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Jesica N. Fellman, Senior Deputy County Counsel, for Plaintiff and Respondent.

G.S. (Father) and E.S. (Mother) appeal orders of the juvenile court terminating their parental rights to their four children and selecting permanent plans of adoption for them pursuant to Welfare and Institutions Code section 366.26[1] after finding that the children are adoptable.  On appeal, Father contends, and Mother joins in his contention, that there is insufficient evidence to support the court's finding, by clear and convincing evidence, that the children are adoptable.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father have four children together, daughters Sn. S. and St. S., born in 2015 (the twins), daughter A.S., born in 2017 (youngest daughter), and son G.S., born in 2018 (son).[2]  In August 2018, the San Diego

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    Mother has an older son, J., born in 2013, from a different relationship who is not a subject of this appeal.

2

County Health and Human Services Agency (Agency) received a report that Mother and her son tested positive for methamphetamines at the time of his birth. Mother admitted she used methamphetamines twice a week since January 2018 after Father was deported. Prior to the son's birth, the Agency had received reports stating concerns about the older children's hygiene and the condition of the family home, and the Agency's investigations showed the home was infested with cockroaches, gnats, and animal feces and urine. During an August 2018 home visit, the Agency found the older children's teeth were broken and yellow and they had rashes, which were later determined to be bed bug bites, scabies, and lice.

In August 2018, the Agency filed a section 300, subdivision (b), dependency petition for each child, alleging that the child had suffered, or there was a substantial risk that the child would suffer, serious physical harm or illness as a result of the parents' failure or inability to supervise or protect the child adequately. At the children's detention hearing, the court found the Agency had made a prima facie showing in support of the petitions and detained the children out of the home in a confidential foster home.

At the October 2018 jurisdiction hearing, the court made true findings, by clear and convincing evidence, on the petitions' allegations and ordered that it had jurisdiction over the children. At the December contested disposition hearing, the court removed the children from their parents' custody and placed them in the foster home. It also ordered the Agency to provide the parents with reunification services and set a six-month review hearing.

In its six-month review hearing report, the Agency stated that the children were thriving in their placement and had made significant progress

in their development and health. The three daughters had been successfully treated for lice and scabies and their skin rashes had healed. Their behavior was notably less aggressive and "much nicer." In particular, the youngest daughter, who was described as traumatized and fearful when she was first placed in foster care, was becoming confident and secure and had learned how to self-soothe. The children appeared bonded to their foster parents. In April 2019, the children's case liaison from Voices for Children reported that the children had multiple behavioral and developmental concerns and had been recommended for comprehensive developmental evaluations. Multiple services, including trauma therapy, were recommended for the children, and they were receiving those services. Both the Agency social worker and the foster mother had observed significant progress in the children's behavior and functioning since their initial placement in foster care and receipt of services.

Prior to the six-month review hearing, the Agency learned that Father had been taken into federal custody and it was unclear how long he would be in custody. While in custody, Father stated that after his release, he would not be returning to California and was not interested in pursuing reunification with the children. Mother failed to participate in reunification services or make any progress in her case plan and had only sporadic contact with the children. Accordingly, the Agency recommended that the parents' reunification services be terminated and that a section 366.26 permanency planning hearing be set.

At the contested July 2019 six-month review hearing, the court found, by clear and convincing evidence, that there would be a substantial risk of detriment to the children's physical and emotional well-being if they were returned to their parents. The court further found there was not a

substantial probability the children would return to their parents' custody by the date of the permanency hearing. Based on those findings, the court ordered that the parents' reunification services be terminated and it set a section 366.26 hearing date.

In August 2019, the foster parents, who had cared for the children for about one year, informed the Agency that they were unwilling to adopt all four children and wanted to adopt only the son. At an October child and family team (CFT) meeting, the Agency informed the foster mother that it would begin adoption recruitment efforts to find a permanent home willing to adopt all four children.

In January 2020, the foster parents filed a de facto parent request and stated they sought to adopt only the son because of the high needs of all four children and the son needed specialized care with all-day monitoring. Also in January, the Agency located a potential adoptive placement for all four children and began facilitating in-person visits between the children and the prospective adoptive parents. In February, the Agency placed the children with the prospective adoptive parents. The prospective adoptive mother was extremely affectionate toward the children. Shortly after the children's placement, their former foster parents filed an amended de facto parent request and stated they sought to adopt all four children. The former foster parents also filed a section 388 petition, requesting that the children be returned to their care. However, the Agency remained concerned that the former foster parents were not truly committed to adopting all four children or able to meet their needs.

At the February 2020 section 366.26 hearing, Mother and Father requested a contested hearing, which the court set to be heard concurrently

with the former foster parents' de facto parent request and section 388 petition.  The court also authorized monthly visits between the children and their former foster parents.  Father informed the Agency that he had been released from custody, was living in Mexico, opposed the children's adoption, and wanted to care for them himself.  However, Father had minimal contact with the Agency and had not shown he had completed his case plan services.  During their virtual visits with Father, the children seemed disinterested, did not remain engaged, and would walk away.

In July 2020, the Agency received a referral from the Foster Family Agency (FFA) social worker, expressing concerns about the prospective adoptive placement.  The social worker reported that the prospective adoptive father yelled at the children and was too strict and the home was messy.  Based on that report, the FFA gave the Agency a 14-day notice to move the children, and the Agency then began assessing other available adoptive placements for the children.  At that time, placement with the former foster parents was not an option because their resource family approval (RFA) was on hold due to allegations of child neglect.

In August 2020, the Agency located new prospective adoptive parents for the children.  They had seen the children during the Agency's previous adoption recruitment efforts and began the RFA evaluation process shortly thereafter.  The children had remained on their minds since then.  They had previous foster care experience and had always wanted to adopt.  The new prospective adoptive mother was a stay-at-home parent, who was a trained speech pathologist and had been a preschool teacher for several years.  She grew up with seven siblings and her parents lived in the area and were available to help as the children adjusted to their new home.  The new

prospective adoptive father worked from home and planned to take time off as the children acclimated to their new home.

In early September 2020, the Agency placed the children with the new prospective adoptive parents. The children appeared happy and comfortable with their new placement and did not want to return to the former foster parents. During two subsequent home visits, the Agency social worker found the new prospective adoptive parents to be committed to adoption and were open to suggestions and interventions to help them with the children's trauma.

In late September 2020, the court held a concurrent hearing on the former foster parents' section 388 petition and request for de facto parent status and the children's section 366.26 permanency planning issues. Father joined in the former foster parents' section 388 petition in which they requested placement of the children with them. The former foster mother testified that the children were extremely traumatized when they were initially placed in her home in August 2018. She testified that the children initially required medical, psychiatric, and special services, but had made progress after receiving those services. She testified that while she and the former foster father had initially planned to adopt only the son, they changed their minds in January 2020 and wanted to adopt all four children.

Father testified that he wanted the children returned to the former foster parents and felt the children had acted differently toward him during their two prospective adoptive placements. If his parental rights were terminated, he hoped to have continued contact with the children.

In her stipulated testimony, Agency social worker Candace M. stated she had no concerns about the former foster parents' care of the children

when she conducted monthly home visits from September 2018 through December 2018.  In the stipulated testimony of another Agency social worker, Jessica C., there was no longer a hold on the former foster parents' RFA evaluation.  The court also admitted in evidence, among other documents, the Agency's section 366.26 report and addenda thereto in which the Agency opined the children were adoptable and recommended that the court find the children were adoptable and select adoption as their permanent plans.

After considering the witnesses' testimony, the Agency's reports, and other documentary evidence and hearing arguments of counsel, the court first denied the former foster parents' section 388 petition seeking return of the children to their care.  In so doing, the court found it was not in the children's best interests to change placements again.  Nevertheless, the court granted their request for de facto parent status.

As to the section 366.26 permanency planning issues, the court found, by clear and convincing evidence, that the children were likely to be adopted. It noted that in the three weeks the children had been placed with the new prospective adoptive parents, the children had undergone a transformation where they felt comfortable and safe and secure in that home.  The court also noted the new prospective adoptive parents' continuing commitment to adopt the children.  Finding no legal impediment to the children's adoption and none of the exceptions to termination of parental rights applied, the court terminated Mother's and Father's parental rights and selected adoption as the children's permanent plans.

Mother and Father timely filed notices of appeal challenging the court's section 366.26 orders.

DISCUSSION

I

*Adoptability under Section 366.26 Generally*

When there is no probability that a child will be reunified with a parent and reunification services have been terminated, the juvenile court must conduct a section 366.26 hearing and select a permanent plan for the child. (*In re Celine R.* (2003) 31 Cal.4th 45, 52.)  "The court has four choices at the [section 366.26] permanency planning hearing.  In order of preference the choices are:  (1) terminate parental rights and order that the child be placed for adoption . . . ; (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care."  (*Id*. at p. 53.)  Adoption is the preferred permanent plan.  (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 997; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)  The juvenile court does not consider other permanent plans unless and until adoption has been rejected. (§ 366.26, subd. (b)(1)-(7); *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164.)

At a section 366.26 hearing, the juvenile court, in selecting a permanent plan for a dependent child of the court, must determine whether Agency has shown, by clear and convincing evidence, it is likely the child will be adopted and, if so, then terminate parental rights and order the child placed for adoption.  (§ 366.26, subd. (c)(1).)  In making that finding, the court must consider the Agency's adoption assessment report and any other relevant evidence.  (§ 366.26, subd. (c)(1).)  "The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time."  (*In re Carl R.*

9

(2005) 128 Cal.App.4th 1051, 1060 (*Carl R.*).) "[W]hat is required is clear and convincing evidence of the likelihood that the [child] will be adopted within a reasonable time either by the prospective adoptive family or some other family." (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844.)

Although the court need not find a child to be "generally" or "specifically" adoptable (*In re Mary C.* (2020) 48 Cal.App.5th 793, 802), evidence showing that a child is either specifically adoptable or generally adoptable may support a finding that the child is likely to be adopted within a reasonable time. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1651 (*Sarah M.*).) "The question of adoptability posed at a section 366.26 hearing usually focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt that child. [Citation.] If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home." (*Carl R., supra,* 128 Cal.App.4th at p. 1061.) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*Sarah M., supra*, at pp. 1649-1650.) The presence or absence of a proposed adoptive family is only one factor to be considered by the court. (*In re David H.* (1995) 33 Cal.App.4th 368, 378.) If, however, a child is found adoptable based solely on a particular family's willingness to adopt (i.e., the child is specifically adoptable), the court must find whether there is any legal impediment to adoption and whether the prospective adoptive parents can

10

meet the child's needs.  (*Carl R., supra*, at p. 1061; *In re J.W.* (2018) 26 Cal.App.5th 263, 268.)

On appeal from an order finding a child is likely to be adopted within the meaning of section 366.26, we apply the substantial evidence standard of review.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232; *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223-224.)  In determining whether there is substantial evidence to support a finding or order, "[w]e do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)  The appellants challenging that finding bear the burden on appeal to show there is insufficient evidence to support the court's findings and orders.  (*Ibid.*; *In re D.M.* (2012) 205 Cal.App.4th 283, 291.)  In determining whether there is substantial evidence to support the court's finding by clear and convincing evidence, we determine whether the record as a whole contains "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*In re Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

II

*Substantial Evidence Support the Court's Adoptability Findings*

Father contends, and Mother joins in his contention, that there is insufficient evidence to support the juvenile court's finding at the section 366.26 hearing that the children are likely to be adopted within a reasonable time.  He argues the children had severe behavioral and emotional issues

11

that required extensive services, which needs made it unlikely they would be adopted within a reasonable time.

Based on our review of the record, we conclude there is substantial evidence to support the juvenile court's finding, by clear and convincing evidence, that each of the four children is likely to be adopted within a reasonable time. In particular, there is substantial evidence to support an implied finding by the court that the children are generally adoptable. The Agency opined the children were adoptable and recommended that the court find the children were adoptable. The children's current prospective adoptive parents had shown consistent interest in adopting the children since they initially saw the children during the Agency's previous adoption recruitment efforts and began the RFA evaluation process shortly thereafter. By the time of the section 366.26 hearing in late September 2020, the children had been placed with the current prospective adoptive parents for about three weeks and appeared happy and comfortable with their new placement. During two subsequent home visits, the Agency social worker found the current prospective adoptive parents to be committed to adoption and were open to suggestions and interventions to help them with their trauma. Furthermore, the former foster parents were interested in adopting all four children since February 2020 (after previously expressing interest in adopting only the son), which interest was demonstrated by their section 388 petition and request for de facto parent status. By the time of the section 366.26 hearing, the former foster parents' RFA evaluation was no longer on hold. Finally, the original prospective adoptive parents were interested in adopting the children at the time of their February 2020 placement with them and thereafter and presumably continued to be interested in adopting them even after the

12

children were removed from them in early September 2020 after the FFA referral.

Given the ample evidence that at least three different sets of parents were interested in adopting the children at the time of the section 366.26 hearing and that the Agency opined that they are adoptable, we conclude there is substantial evidence to support a finding, by clear and convincing evidence, that the children are generally adoptable and therefore that it is likely each of the four children will be adopted within a reasonable time. (*In re A.A.*, *supra*, 167 Cal.App.4th at p. 1313; *Sarah M.*, *supra*, 22 Cal.App.4th at p. 1651.) Specifically, the fact that not only the current prospective adoptive parents, but also the former foster parents and the previous prospective adoptive parents, are interested in adopting all four children shows that the children are generally adoptable. As stated above, "a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*Sarah M., supra*, at pp. 1649-1650.) Because there is substantial evidence to support a finding that the children are generally adoptable, we need not "examine the suitability of the prospective adoptive home" or determine whether there is substantial evidence to support an alternative finding that the children are specifically adoptable. (*Carl R., supra,* 128 Cal.App.4th at p. 1061.)

Nevertheless, assuming arguendo that there is insufficient evidence to support a finding of general adoptability, we conclude there is substantial evidence to support a finding, by clear and convincing evidence, that the children are specifically adoptable. In particular, there is substantial evidence to support a finding that there is no impediment to adoption of the children by the current prospective adoptive parents and that they could

13

meet the children's needs. (*Carl R.*, *supra*, 128 Cal.App.4th at p. 1061; *In re J.W.* (2018) 26 Cal.App.5th 263, 268.) As discussed above, the current prospective adoptive parents had a continuing interest in adopting the children since first seeing them during the Agency's previous adoption recruitment efforts and began the RFA evaluation process shortly thereafter. They had previous foster care experience and had always wanted to adopt. Importantly, the current prospective adoptive mother was a stay-at-home parent, who was a trained speech pathologist and had been a preschool teacher for several years, making her especially suitable to care for the four young children. She grew up with seven siblings and her parents were available to help as the children adjusted to their new home. Also, the current prospective adoptive father worked from home and planned to take time off as the children acclimated to their new home. Furthermore, after the children's placement with them in early September 2020, the children appeared happy and comfortable with their new placement and did not want to return to the former foster parents. During two subsequent home visits, the Agency social worker found the current prospective adoptive parents were committed to adopting the children and open to suggestions and interventions to help them with their trauma. Finally, the record does not indicate there is any legal impediment to adoption of the children by the current prospective adoptive parents. Based on the above evidence, we conclude there is substantial evidence for a finding, by clear and convincing evidence, that the children are specifically adoptable and therefore that it is likely each of the four children will be adopted within a reasonable time. (*In re A.A.*, *supra*, 167 Cal.App.4th at p. 1313; *Sarah M.*, *supra*, 22 Cal.App.4th at p. 1651.)

14

Contrary to Father's assertion, the fact that the children had behavioral and emotional problems on their initial placement with the former foster parents in August 2018 does not show they are not adoptable within a reasonable time.  As discussed above, after their initial placement, the children soon bonded to their former foster parents and the children began receiving multiple services, including trauma therapy, for their behavioral and developmental issues.  Both the Agency social worker and the former foster mother observed significant progress in the children's behavior and functioning after their initial placement and receipt of services.  Father has not cited any evidence in the record showing that, at the time of the section 366.26 hearing in September 2020, that the children's behavioral and emotional problems (e.g., bonding, attachment, and trauma-related issues) and/or needs for services are so significant that they precluded a finding that the children are either generally or specifically adoptable and therefore likely to be adopted within a reasonable time.  (Cf. *In re R.C.* (2008) 169 Cal.App.4th 486, 492 [possibility of future problems did not make child unadoptable].)  In particular, he has not shown that the current prospective adoptive parents (or, for that matter, the former foster parents or previous prospective parents) are unwilling or unable to meet the children's needs or that there is any legal impediment to their adoption of the children.  To the extent Father cites evidence and/or draws inferences from the evidence that would have supported a contrary finding by the court, he misconstrues and/or misapplies the substantial evidence standard of review.  (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 291.)

Furthermore, contrary to Father's assertion, the fact that the children had been placed with the current prospective adoptive parents for only three weeks at the time of the section 366.26 hearing or that the children are part

15

of a large sibling set does not show the children are not generally or specifically adoptable and therefore not likely to be adopted within a reasonable time. As discussed above, the evidence showing that at least three sets of parents are interested in adopting the children supports a finding that the children are generally adoptable. Even if the children had not been placed with any of those parents at the time of the section 366.26 hearing, there would still be substantial evidence to support a finding of their adoptability based on those parents' expressed interest in adopting the children. Furthermore, given the strong evidence of the current prospective adoptive parents' interest in adopting the children and the current prospective mother's special suitability to care for the children with their particular needs, there is substantial evidence to support a finding that the children are specifically adoptable regardless of the length of the children's placement with the current prospective adoptive parents. To the extent Father cites evidence and/or draws inferences from the evidence that would have supported a contrary finding by the court, he misconstrues and/or misapplies the substantial evidence standard of review. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 291.)

## DISPOSITION

The orders are affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.