[No. F057848. Fifth Dist. Jan. 27, 2010.]

In re G.M. et al., Persons Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
M.R., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

554

**COUNSEL**

Darlene Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kevin Briggs, Interim County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**LEVY, Acting P. J.**—M.R. (mother) appeals from an order terminating parental rights (Welf. & Inst. Code, § 366.26) to two of her children, G. and L.[1] She contends the court erroneously barred evidence on whether the children's prospective adoptive parent was eligible to adopt and improperly failed to consider whether there was a legal impediment to adoption by the prospective adoptive parent. Mother also argues the court erred by rejecting her claim that termination would be detrimental to the children. On review, we disagree with each of mother's contentions and affirm.

■ In the published portion of our opinion, we hold evidence of a legal impediment to adoption (Fam. Code, §§ 8601–8603) by an identified prospective adoptive parent is relevant and therefore admissible when a social worker's opinion that a child is likely to be adopted is based in part on the prospective adoptive parent's willingness to adopt. ■ On the record before us, however, we conclude the trial court neither barred such evidence nor was compelled to consider whether there was or could be a legal impediment to adoption by the children's prospective adoptive parent in evaluating whether it was likely the children would be adopted.

## PROCEDURAL AND FACTUAL HISTORY

G. and L. have been in and out of foster care since 2004, due in large part to mother's substance abuse and resulting inability to provide adequate and appropriate care. Most recently, in August 2007, the Fresno County Superior Court adjudged eight-year-old G., six-year-old L., and their other siblings juvenile dependents and removed them from parental custody. Because reunification was not possible, the court in January 2008 conducted its first section 366.26 hearing for the children and their siblings.

Respondent Fresno County Department of Children and Family Services (department) offered no assessment of the likelihood of any of the children's adoption. Instead, it determined long-term foster care was the most appropriate plan at the time because, in relevant part, G. and L.'s care provider was able to commit to long-term foster care. G. and L.'s care provider was their great-aunt (aunt). They had been placed with her since August 2007. The court ordered long-term foster care as the appropriate plan for all of mother's children. As the court explained, there was a compelling reason that termination of parental rights would be detrimental. "Mother [h]as maintained regular visitation and contact with the children and at this point the children do benefit from continuing that relationship. [¶] Additionally, the older

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

children object to the termination of parental rights, and additionally . . . termination of parental rights would interfere with the children's relationship with each other."

Months later, the department petitioned (§ 388) to set a new section 366.26 hearing for G. and L. A department panel determined it would be in the children's best interest to assess them for a more permanent plan of adoption with their aunt because the children wished to be adopted by her and she wished to adopt them. In late 2008, the court granted the department's petition and set a second section 366.26 hearing for G. and L.

In advance of the hearing, the department prepared a new "366.26 WIC Report" for G. and L. In its report, the department recommended adoption with termination of parental rights as the most appropriate permanent plan for G. and L., who were nine and eight years old respectively. It no longer appeared mother had a strong relationship or a parent/child bond with the children. In addition, G. and L. had unremarkable visits with their siblings twice a month. Only their oldest sibling objected to G. and L. being adopted.

Under a heading of "<u>Analysis of the Likelihood of Adoption and Proposed Permanent Plan</u>" department social worker, Manuel Alcaraz, wrote:

"[L.] and [G.] are generally adoptable in that they are both healthy, happy and have a strong attachment to the prospective adoptive parent. They do not have developmental or physical concern[s]; they are healthy children who appear to be developmentally on target. The prospective adoptive parent has had a placement of the children for almost two years and is very committed to providing [L.] and [G.] with the most appropriate permanent plan through adoption, with termination of parental rights. The prospective adoptive parent has [an] adequate support system of family and friends. It would not be detrimental to [L.] and [G.] to terminate parental rights due to the positive relationship [L.] and [G.] share with their prospective adoptive parent. The children have a strong and loving parent/child bond with the current care provider. The children are eight and nine years of age and have expressed that they want to be adopted by their current care provider and already feel that they are part of the family. Both [L.] and [G.] have a strong attachment to their care provider and the children would benefit from continuing the parent/child relationship that has been established with the current care provider. It is in the children's best interest to have a stable and permanent home through adoption with their current care provider.

"Furthermore, while in assessment this social worker has observed one visit between the children and their mother . . . . [Father] has not made himself available to the department to request visits. It does not appear that it

would be detrimental to [L.] and [G.] to terminate parental rights because the lack of parent/child relationship they have with their biological parents."

Alcaraz also included an assessment of the aunt as the children's prospective adoptive parent as required by statute (§§ 361.5, subd. (g)(1)(D), 366.21, subd. (i)(1)(D), 366.22, subd. (c)(1)(D)). Relevant to this appeal, Alcaraz reported "[the aunt] explained that she has been married once and is now separated."

Mother filed a written statement of contested issues prior to the section 366.26 hearing. In it, she objected to adoption as a permanent plan and asked the court to continue long-term foster care as the children's permanent plan. She cited as a contested issue that "the Department has not properly evaluated the prospective adoptive parent's lifestyle, and the Department should not have recommended adoption by this care provider."

At the start of the section 366.26 hearing, the department argued mother's contest over the aunt's lifestyle was not a proper issue for trial. The court agreed. The department in turn asked that no questions on the issue be permitted. The court again agreed.

Mother's counsel called social worker Alcaraz as her first witness. Relevant to this appeal, counsel asked whether the aunt had "been married but then got divorced during the time that she was the care provider for the children." The children's attorney objected on relevance grounds and the department's counsel joined. The court overruled the objection.

Alcaraz testified in turn that the aunt had separated from her husband. The witness was unsure whether the separation occurred while the aunt cared for the children. She told Alcaraz she was separated from her husband but not legally divorced. Alcaraz believed the aunt was married in the Catholic Church and she was not divorced. He relied on what she told him and did not confirm her marital status through any official documentation or court records.

Later, mother testified and expressed concern that the department had not checked out the aunt's husband because he did live with her. The court responded, "What?" Mother replied, "Her husband does live there with her. And I've tried to get her husband to get—." The court interrupted, "At this point in time we've already ruled upon that. I'm striking that."

In her closing argument, mother's counsel claimed the theme of the department's recommendation was stability for the children and "[y]et the children have been placed with someone . . . who says she is separated but

not divorced. There is no confirmation of this. There is no official documentation that shows that there is a separation or that the spouse . . . does not continue to be involved or does not disrupt the family life." The court responded, "[t]hat's really speculation, counsel." Counsel submitted the matter.

Having found clear and convincing evidence that it was likely the children would be adopted, the court selected adoption as the appropriate permanent plan and terminated parental rights.

## DISCUSSION

I. *The Eligibility of a Prospective Adoptive Parent to Adopt Is a Relevant Issue*

A. *Introduction.*

■ Once a court sets a hearing pursuant to section 366.26 to select and implement a permanent plan for a dependent child, the department must prepare an assessment (§§ 361.5, subd. (g)(1), 366.21, subd. (i)(1), 366.22, subd. (c)(1)), frequently referred to as an adoption assessment. Such an adoption assessment provides the information necessary for the juvenile court to determine whether it is likely the child will be adopted (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1316, fn. 7 [84 Cal.Rptr.3d 841]) and to consequently order termination of parental rights.

■ Relevant to this appeal, the assessment must include "[a] preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent." (§§ 361.5, subd. (g)(1)(D), 366.21, subd. (i)(1)(D), 366.22, subd. (c)(1)(D).) A child's current caretaker may be designated as a prospective adoptive parent if the child has lived with the caretaker for at least six months, the caretaker currently expresses a commitment to adopt the child, and the caretaker has taken at least one step to facilitate the adoption process. (§ 366.26, subd. (n)(1).)

The department's preliminary assessment of the aunt as the children's prospective adoptive parent and the social worker's trial testimony raised a potential issue about the aunt's eligibility to adopt. The preliminary assessment revealed she was married, but separated. At trial, the social worker testified the aunt was separated but not divorced and he did not confirm her marital status through any official documentation or court records.

■ Family Code section 8603 provides a married person who is not lawfully separated cannot adopt a child without the spouse's consent, pro-

vided the spouse is capable of giving that consent. This provision has been characterized as a legal impediment to adoption by such a person. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650 [28 Cal.Rptr.2d 82] (*Sarah M.*).)[2]

The record is silent regarding whether the aunt was lawfully separated or she had secured or could secure her husband's consent to her adopting the children. The aunt did attend the trial, but no one called her as a witness to resolve this potential issue one way or the other. At most, mother tried to frame the aunt's marital status as an issue about her lifestyle and her stability.

### B. *The parties' contentions.*

Against this factual and legal backdrop, mother contends it was error for the court to terminate parental rights. She argues the court erroneously barred evidence of the aunt's marital status. In addition, mother urges that the issue of whether there was a legal impediment to the aunt adopting G. and L. was relevant and the court should have considered it because the children were only specifically adoptable by the aunt.

Not only does the department dispute each of these claims, it also characterizes mother's arguments as a challenge to the sufficiency of its adoption assessment as well as to whether there was substantial evidence to support the court's finding that it was likely the children would be adopted. The department in turn claims mother has forfeited the issue of any legal impediment to adoption because she did not raise the issue at trial and cannot prove the absence of either a lawful separation or the husband's consent. In her reply, mother seeks for the first time to challenge the department's adoption assessment and argues she has forfeited nothing.

Much of the parties' arguments relate to one critical issue, evidentiary relevance. As we will discuss, whether the aunt was lawfully separated or she had obtained or could obtain her husband's consent was relevant and could have been pursued at trial. The court, however, did not bar evidence regarding the aunt's marital status. The court in fact overruled a relevance objection on this very point. We acknowledge the shared goal of the department, the children, and the aunt was undoubtedly that she adopt the children. The record nevertheless does not support mother's further claims

---

[2] *Sarah M.* also identified two additional legal impediments to adoption in Family Code sections 8601 and 8602. (*Sarah M., supra*, 22 Cal.App.4th at p. 1650.) Family Code section 8601 requires that a prospective adoptive parent must be at least 10 years older than the child, unless the adoption is by a stepparent, sister, brother, aunt, uncle, or first cousin and the court is satisfied that adoption by the parent and, if married, by the parent's spouse is in the best interests of the parties and is in the public interest regardless of the ages of the child and the prospective adoptive parent. In the adoption of a child over the age of 12, Family Code section 8602 requires the child's consent.

that the children are adoptable only by their aunt or the silent record regarding the aunt's marital status compels reversal.

### C. *Whether there was a legal impediment to the aunt's eligibility to adopt was a relevant issue in this case.*

■ The parties' debate over the relevance of the aunt's marital status arises from the following statement in *Sarah M., supra,* 22 Cal.App.4th at page 1650. If a social worker's opinion that a child is likely to be adopted is "based solely" on the existence of a prospective adoptive parent who is willing to adopt the minor, an inquiry may be made into whether there is any legal impediment to adoption by such an individual. (*Ibid.*) As *Sarah M.* explains, a legal impediment to adoption would be relevant in such a case because it would preclude the very basis upon which the social worker formed the opinion that the child is likely to be adopted. (*Ibid.*) *Sarah M.* went on to identify three legal impediments contained in the Family Code, as previously mentioned, including the provision at issue here, Family Code section 8603. (*Sarah M., supra,* at p. 1650.)

■ The department assumes any alleged legal impediment to a prospective adoptive parent's eligibility to adopt is irrelevant under *Sarah M.* when, in a social worker's opinion, a child is "generally adoptable." We do not read *Sarah M.* as narrowly as the department would like. Instead, we interpret the *Sarah M.* language as a simple observation, that is, whether a legal impediment under Family Code section 8601, 8602, or 8603 exists to a prospective adoptive parent's eligibility to adoption is a relevant issue when the likelihood of a child's adoption is "based solely" on the existence of the prospective adoptive parent. This observation does not preclude, however, the relevance of legal impediment to adoption evidence under Family Code section 8601, 8602, or 8603 in other situations, including this case.

We note that one year prior to its *Sarah M.* decision, the same appellate panel acknowledged as much when it published *In re Scott M.* (1993) 13 Cal.App.4th 839 [16 Cal.Rptr.2d 766] (*Scott M.*). Specifically, the court in *Scott M.* observed: "If appellant had sought to introduce evidence of some legal impediment to adoption by the prospective adoptive parents, such evidence would have been relevant because the social worker's opinion that the minors will be adopted was *based in part* on the existence of the prospective adoptive family which was willing to adopt the minors." (*Id.* at p. 844, italics added.)

■ In addition, as we mentioned in our introduction, the statutory scheme requires that if there is an identified prospective adoptive parent for a dependent child, the department must conduct a preliminary assessment of

that parent's eligibility to adopt as part of its overall adoption assessment (§§ 361.5, subd. (g)(1)(D), 366.21, subd. (i)(1)(D), 366.22, subd. (c)(1)(D)). The court must in turn read and consider the adoption assessment in making its findings and orders (§ 366.26, subd. (b)). The statutory scheme therefore assumes a prospective adoptive parent's eligibility to adopt is a relevant consideration.

█ Further, we note appellate courts citing the "based only" language of *Sarah M.*, have addressed under what circumstances the trial court *must consider* whether a legal impediment to adoption by the prospective adoptive parent exists in deciding a dependent child's likelihood of being adopted. (See *In re R.C.* (2008) 169 Cal.App.4th 486, 494 [86 Cal.Rptr.3d 776]; *In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1408–1410 [80 Cal.Rptr.3d 287]; *In re Valerie W.* (2008) 162 Cal.App.4th 1, 15 [75 Cal.Rptr.3d 86]; *In re Helen W.* (2007) 150 Cal.App.4th 71, 80 [57 Cal.Rptr.3d 914]; *In re Carl R.* (2005) 128 Cal.App.4th 1051, 1062 [27 Cal.Rptr.3d 612].) In these cases, the appellate courts have held the trial court *must* consider, in evaluating whether a child is likely to be adopted, any legal impediments to adoption when the child is adoptable only because a particular family is willing to adopt. In our view, this is distinct from the more fundamental question of whether legal impediment evidence is relevant and therefore admissible when there is an identified prospective adoptive parent for a dependent child.

█ Given our reading of *Scott M.*, *Sarah M.*, subsequent case law, and the statutory scheme, we are persuaded that evidence of a legal impediment to adoption under the Family Code by an identified prospective adoptive parent is relevant when a social worker's opinion that a dependent child will be adopted is based in part on the willingness or commitment of an identified prospective adoptive parent. Not all dependency cases fall neatly into one of two scenarios: one, the availability of a prospective adoptive parent is *not a factor whatsoever* in the social worker's adoptability assessment; or two, the child is likely to be adopted *based solely* on the existence of a prospective adoptive parent. These scenarios represent opposite ends on the continuum of when a child is likely to be adopted. However, many adoption assessments that recommend an adoptability finding fall somewhere in the middle. They consist of a combination of factors warranting an adoptability finding, including, as in this case, the availability of a prospective adoptive parent. This is the reality we confront, notwithstanding appellate arguments that assume a child is either generally adoptable without regard to a prospective adoptive parent or specifically adoptable based solely on the availability of a prospective adoptive parent.

In our view, therefore, whether there may have been a legal impediment under Family Code section 8603 to the aunt's eligibility to adopt was a

relevant issue for inquiry at trial. Nevertheless, as discussed below, we disagree with mother's claims of trial court error.

> D.   *The trial court did not exclude evidence regarding whether a legal impediment existed.*

The trial court did not foreclose testimony on the aunt's eligibility to adopt or whether a legal impediment to the children's adoption by her existed. While mother accuses the trial court of preventing her from inquiring about the aunt's marital status, it in fact overruled an objection to such questioning of Alcaraz.

■ The trial court did agree that the aunt's lifestyle was an improper subject for inquiry at trial and did prohibit questioning in this regard. In so ruling, the trial court prevented an inquiry into whether the aunt was suitable to adopt. The court's ruling was entirely proper in that respect. As *Scott M., supra*, 13 Cal.App.4th at page 844 explained, "General suitability to adopt is a subjective matter which does not constitute a legal impediment to adoption. If inquiry into the suitability of prospective adoptive parents were permitted in section 366.26 hearings, we envision that many hearings would degenerate into subjective attacks on all prospective adoptive families in efforts to avoid termination of parental rights. Such a result is not envisioned by the statutory scheme."

Questions regarding an individual's suitability to adopt are "reserved for the subsequent adoption proceeding," not the section 366.26 hearing at which parental rights may be terminated. (*Scott M., supra*, 13 Cal.App.4th at p. 844.)

Whether the aunt was suitable to adopt was a distinct and separate issue from whether there was a legal impediment that made her ineligible to adopt the children. If she wished to contest whether the aunt was or could be ineligible to adopt based on Family Code section 8603, mother could have done so by specifically asking either the social worker or the aunt, who was present in court, about whether the aunt was lawfully separated or had or could obtain her husband's consent to an adoption. The court in turn could have considered any evidence on the subject in evaluating whether it was likely the children would be adopted within a reasonable time. (*In re Zeth S.* (2003) 31 Cal.4th 396, 406 [2 Cal.Rptr.3d 683, 73 P.3d 541].) Mother, however, made no such effort at trial. Simply claiming as she did in her closing argument—that there is no official documentation showing a separation—did not raise as an issue whether there was a legal impediment to the aunt's eligibility to adopt.

Having not raised the legal impediment question in the trial court, mother failed to properly preserve for appellate purposes her claim of trial court

error. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746]; *In re R.C., supra,* 169 Cal.App.4th at p. 493, fn. 2.) She also did not object to the department's preliminary assessment as inadequate in this regard and thus forfeited the opportunity to now place the blame for the silent record on the department. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 411–412 [15 Cal.Rptr.2d 613].)

### E. *The social worker did not opine the children were adoptable based solely on the aunt's willingness to adopt them.*

This leaves us with mother's claim that the children were adoptable only by the aunt and therefore the trial court should have considered on its own whether a legal impediment existed to the aunt's eligibility. (*In re Brandon T., supra,* 164 Cal.App.4th at p. 1410.) In so arguing, mother overlooks the department's analysis that the children were "generally adoptable in that they [were] healthy, happy and ha[d] a strong attachment to the prospective adoptive parent" and the children also appeared to be developmentally on target. This evidence went unchallenged in the trial court.

Mother now speculates the strong attachment which existed between the aunt and the children made them only adoptable by the aunt. Mother also criticizes the lack of direct evidence that the children could be placed for adoption with another family if the aunt was unable to adopt them. No doubt there was evidence of a strong attachment. It is also true the department did not expressly address an alternative if the aunt could not adopt.

However, this was not a case in which the social worker opined the children were likely to be adopted based solely on the existence of a prospective adoptive parent who was willing to adopt. Mother's arguments ignore the evidence supporting the likelihood of the children's adoption. She would have us rather reweigh other evidence in the record and draw unreasonable inferences against the judgment and in her favor. This we cannot and will not do. (*In re Laura F.* (1983) 33 Cal.3d 826, 833 [191 Cal.Rptr. 464, 662 P.2d 922].) Neither the record nor the rules guiding our appellate review support mother's claim that her children were only adoptable by their aunt. We therefore conclude on this record that the court did not have a duty under *In re Brandon T., supra,* 164 Cal.App.4th at page 1410 to evaluate whether there was a legal impediment to adoption by the aunt. We further conclude there was substantial evidence from which the trial court could properly find that it was likely adoption would be realized within a reasonable time. (*In re Zeth S., supra,* 31 Cal.4th at p. 406.)

II. *The Trial Court Did Not Abuse Its Discretion in Rejecting Mother's Detriment Argument*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order terminating parental rights is affirmed.

Cornell, J., and Gomes, J., concurred.

---

[*]See footnote, *ante*, page 552.