Filed 12/4/24; certified for publication 12/31/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| In re Z.H., a Minor. | B338184 |
| --- | --- |
| | (Los Angeles County Super. Ct. No. 23CCAB00002) |
| I.H. et al., Petitioners and Respondents, v. K.M., Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Juvenile Court Referee.  Affirmed and remanded with instructions.

Christopher Blake, under appointment by the Court of Appeal, for Objector and Appellant.

Family Building, Ted R. Youmans; and Leslie A. Barry for Petitioners and Respondents.

_____

K.M., the mother of minor Z.H. (Mother), appeals a judgment freeing the child from her custody and control and thus terminating her parental rights after the child's father I.H. (Father) and paternal grandmother C.L. filed a Family Code section 7822 petition for that relief.[1] We conclude Mother fails to show the trial court erred or otherwise abused its discretion in terminating her parental rights. We observe, however, that there was a clerical error in the judgment regarding termination of Father's parental rights. Accordingly, we affirm the judgment to the extent it terminates Mother's parental rights but remand with instructions to the trial court to correct the error in the judgment regarding Father's parental rights.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.** *The Section 7822 Petition and Amended Petition*

In March 2023, C.L. filed a petition in this case (Los Angeles County Superior Court case No. 23CCAB00002) to free Z.H., who at the time was eight years old, from Mother's custody and control pursuant to section 7822. Two months later, C.L. filed a notice of related cases stating that there was a pending related case involving custody orders for Z.H. (Los Angeles County Superior Court case No. BF058806). In May 2023, the

_____

[1] All undesignated statutory references are to the Family Code.

court ordered the two cases consolidated and stayed further proceedings in case No. BF058806.

In July 2023, Father and C.L. filed an amended section 7822 petition. It alleged that Mother, with the intent to abandon Z.H., left the minor in the care of Father and C.L. without provision for the child's support and without any communication for a period in excess of one year. The amended petition also alleged that C.L. had filed a separate adoption case (case No. 23CCAD01168)[2] and that Father and C.L. intended to coparent Z.H. According to the amended petition, Z.H. resided with Father and C.L., Father had full physical and legal custody of Z.H., and Mother had not visited Z.H. since December 2, 2017 and had not provided for any of the minor's financial needs since January 2020.

## II.    *The Evidence at Trial*

The bench trial began on May 20, 2024. The parties stipulated to certain facts and the admission of certain exhibits. Several witnesses, including Mother and C.L., testified at the trial. Mother and Father's son Z.H. was born in New Mexico in October 2014. C.L. stayed with the family for the week of his birth. Two weeks later, Mother and Father moved with Z.H. to California, where they lived with C.L.

The child has lived in California with Father and C.L. since October 2014. Mother also lived with Father and Z.H., but only until May 2015, when Mother was arrested for domestic violence and an emergency protective order was issued against her to

---

[2]    At a hearing on November 14, 2023, the trial court referred to case No. 23CCAD01168 as "the adoption case" and stated that it was a related case.

protect Father and Z.H. According to C.L.'s testimony regarding that incident, Mother had attempted suicide. When C.L., a nurse, attempted to discuss Mother's suicidal ideations, Mother told C.L. that she was very depressed. When C.L. discussed wanting to talk to Z.H.'s maternal grandmother and get Mother help, Mother grabbed the baby and said Father and C.L. would never see the baby again. Police officers arrived, and the next day a protective order was issued against Mother.

The protective order was based in part on allegations of Mother's mental health issues—specifically, Mother hearing voices telling her to kill herself and Z.H.—and domestic violence by Mother. As police officers arrived to serve Mother with paperwork, they happened to hear Mother yelling at Father. Father had scratches on his chest and face, and the officers arrested Mother for domestic violence.

In May 2015, based in part on Father's statement that Mother tried to commit suicide, the Solano County Superior Court, in Case No. FFL139085,[3] awarded Father sole physical and legal custody of Z.H., which he continued to retain at the time of trial. Mother was granted supervised visitation with Z.H. twice per week at a professional facility.

Shortly after the domestic violence incident, Mother returned to New Mexico. She began visiting Z.H. in California in June 2015. As a result of Mother violating the facility's supervised visitation rules, Mother's visitation of Z.H. at that

---

[3]     Jurisdiction over custody and visitation of Z.H., which appears to have been initiated in Solano County, was transferred back and forth between the two counties (Solano County Superior Court case No. FFL139085 and Los Angeles County Superior Court case No. BF058806) between 2016 and 2020.

4

facility was suspended in July 2015, reinstated in August 2015, and then terminated around September 2015. Sometime in late 2015, Mother moved back to California and lived with her cousin. The court allowed Mother to visit Z.H. in October 2015 for the child's birthday, with the visit to be supervised by her cousin, and subsequently granted Mother supervised visits every Saturday, plus certain additional visits. Mother, however, only visited Z.H. six times during the summer of 2015, plus once for his October birthday, and once on Christmas Day 2015.

In January 2016, Mother took the child to Stockton, California, which was not in Solano County, in violation of the court's order. Police officers arrived and informed her she was violating a court order. Mother did not resume visitation of her son again until March 2016. From March 2016 through July 2016, Mother visited the child approximately six to eight times, with the visits occurring every other Saturday and lasting an hour or two.

When Mother dropped off Z.H. with C.L. after one of the visits, Mother asked if C.L. knew that the child was bleeding and showed C.L. a smudge of red on the child's diaper. C.L. was concerned about Mother's mental health because it was red lipstick, not blood, on the diaper, which was dry.

In July 2016, venue of the custody and visitation case was changed from Solano County to Los Angeles County, with supervision of visits to continue, albeit through persons other than Mother's cousin. Mother moved back to New Mexico sometime in 2016. She had no visits with Z.H. between July 2016 and August 2017. In September 2017, Mother was allowed supervised visitation on alternate Saturdays. From August 2017 through December 2017, Mother visited the child only once per

month for no more than one or two hours each time.  She completed a total of five visits in 2017 and did not visit her son at all after 2017.

In January 2018, the custody and visitation case was transferred back to the Solano County Superior Court, with Mother to continue to have supervised alternate Saturday visits. In January 2019, the Solano County Superior Court expressed some concerns about Mother's mental health due in part to Mother's claims that an imposter had appeared in court on her behalf.  The court also expressed concern that instead of "exercis[ing] her personal visitation" for over a year, Mother chose instead to visit by way of multiple FaceTime calls with a "child [who] doesn't know who [Mother] is because she hasn't exercised her physical visitation."  Father's attorney informed the court that, not only did a then four-year-old Z.H. struggle to sit still in a chair during calls that lasted upwards of 30 minutes and during which he was "being exposed to profanity" by Mother's new boyfriend in the background, Z.H. would "hid[e] from the [computer] monitor" and become "distressed."  At the close of that hearing, the court in Solano County "suspend[ed] the FaceTime visits," and ordered Mother to resume in-person supervised visitation at a professional facility "so that your child can learn who you are again."  The court noted, "It's been a long time since you've had those visits, and that is no one's fault but your own."

A subsequent hearing in May 2019 revealed that Mother had not participated in any supervised visitation with Z.H. since the previous hearing.  The court observed that, "despite the fact that there have been a lot of accommodations, both by L.A. County and Solano County, to encourage [Mother] to actively participate in the child's life," Mother had not "done anything to

6

try to exercise her visitation" "for a year and a half." The court expressed frustration with Mother's inability to "establish[] herself as an active parent," lamenting to her counsel, "I don't know what to do to encourage your client to participate in parenting this child." The court reduced Mother's supervised visitation with Z.H. to once per month, indicating, "I'm not convinced that ordering every two week visits, when she's not going to show up for them, is appropriate." In rejecting Father's request to suspend Mother's supervised visitation, the court expressed hope that Mother would "step up and try to reintegrate with [her] child's life" because "[t]he child doesn't know [M]other at this point . . . ."

On March 11, 2020, the Solano County Superior Court transferred venue back to Los Angeles County and ordered supervised visitation between Mother and Z.H. once per month for two hours. In April 2023, the Los Angeles County Superior Court discharged the previous child visitation orders pending a review hearing and ordered that Mother and Z.H. may have therapeutic visitation if the therapist determined it would be appropriate. No therapeutic visits took place. Despite the multiple visitation orders from 2018 to 2023, Mother's last visit with Z.H. occurred on December 2, 2017. Mother acknowledged in an October 2023 interview with probation that she had missed many important milestones in Z.H.'s life, including his first steps, first words, and first day of school. She also acknowledged her responsibility for the 2015 incident resulting in her arrest.

The Los Angeles County Superior Court had ordered Mother to pay $105 in monthly child support to Father commencing July 1, 2017. From September 2017 through December 2017, Mother paid $50 per month, for a total of $200

7

for 2017. In 2018, Mother paid a total of $517.70 in child support. In 2019, she paid a total of $726.14. Mother did not provide any financial support for the child after 2019.

Mother admitted at trial that she no longer paid child support even though she knew it was court-ordered. Her child support payments had been collected by a local child support agency, which garnished Mother's wages. When the agency ceased providing collection services, Mother stopped paying child support. She also did not provide medical insurance for Z.H.

Mother sent Z.H. no birthday or other gifts after 2017, nor did she send him any birthday cards.

## II. *The Conclusion of Trial and the Judgment*

After the close of evidence, on May 23, 2024, the trial court found that Mother had abandoned the child for purposes of section 7822. The court stated that "a parent is deemed to have abandoned the child if for the one year period preceding the filing of the petition that parent has left the child in the care, custody and control of the other parent without providing any support for the child, and without any communication or contact with the child." It also explained that it must find by clear and convincing evidence termination of parental rights to be in the child's best interest.

In pronouncing its decision to terminate Mother's parental rights under section 7822, the court reasoned that "[t]he Legislature makes it clear when the court makes this determination [that a parent has abandoned the child], that the child's need for stability is key." Citing the holding in *Adoption of A.B.* (2016) 2 Cal.App.5th 912 (*A.B.*), the court held this "need for stability cannot be postponed indefinitely to conform to an absent parent's plan to reestablish contact 'in the distant future.' " (*Id.*

8

at p. 923). The court found that, by leaving Z.H. in the care of Father, Mother "has focused more on her struggles, as opposed to the best interest of the child, and . . . when a parent focuses on . . . her struggles, knowing that they have a young child out here that needs to be cared for and needs to have stability, it does not work."

The trial court found persuasive the reasoning of the court in *A.B., supra*, 2 Cal.App.5th 912 that "[F]ather's . . . emphasizing his own struggles was not enough to overcome this presumption of abandonment . . . . [H]e should have been focusing on the child's need for stability." Analogizing Mother's situation to that of the father in *A.B.,* the trial court reasoned, "Mother has, essentially, based on her conduct, not shown [Z.H.] that his interests take precedence or his welfare comes first and that his stability and consistency is first and that her parental role must be exercised. She's just abandoned that. She's given it up." Referencing a similar conclusion by the judge in Solano County, the court determined that "Mother has abandoned her parental role and has left that responsibility to the father and the paternal grandmother." Though acknowledging that Mother "holds [Z.H.] in her heart, she still loves him," nonetheless, "it still does not avoid a finding of abandonment under Family Code section 7822." Having found by clear and convincing evidence that Mother abandoned the child under section 7822, the court stated it was signing the judgment freeing Z.H. from Mother's care, custody and control and terminating her parental rights. The court's signed judgment, which provided for Z.H.'s freedom from parental custody and control, was filed that same day.

9

## DISCUSSION

Mother challenges the termination of her parental rights on the ground that the proposed adoption arrangement, a "second parent adoption" in which Z.H. would be adopted by his paternal grandmother C.L. while Father retained his parental rights, is legally invalid. Specifically, she contends that a mother and her adult son cannot simultaneously be the legal parents of the child. Among other flaws in her argument, however, Mother fails to show the trial court was required to consider any legal impediment to the proposed adoption when it terminated her parental rights, and we thus affirm the judgment terminating those rights. Nevertheless, although Mother fails to establish the trial court erred or otherwise abused its discretion in terminating her parental rights, we remand the matter for the trial court to correct a clerical error in the judgment.

## I.   *Mother Fails To Show the Trial Court Erred or Otherwise Abused Its Discretion in Terminating Her Parental Rights*

"Section 7822 provides a separate and distinct mechanism for terminating parental rights based on a parent's voluntary abandonment of a child." (*In re Aubrey T.* (2020) 48 Cal.App.5th 316, 325 (*Aubrey T.*).) Under section 7822, "[i]f a parent has left his or her child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child, a court may declare the child free from the parent's custody and control." (*In re E.M.* (2014) 228 Cal.App.4th 828, 838; see § 7822, subd. (a)(3).) Pursuant to the statute, "[a] declaration of freedom from parental custody and control . . . terminates all parental rights and

10

responsibilities with regard to the child." (§ 7803.) "Accordingly, a section 7822 proceeding to terminate parental rights is appropriate 'where three main elements are met: (1) the child must have been left with another; (2) without provision for support or without communication from the parent for the statutory period; and (3) with the intent on the part of the parent to abandon the child.' " (*Aubrey T.*, at p. 326.) "A trial court's finding of abandonment must 'be supported by clear and convincing evidence.' " (*Ibid.*; see § 7821.) The court must also act in the best interest of the child in a proceeding under section 7822. (§ 7890; see § 7801.)

" ' " '[The] question whether [an] intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case.' " [Citation.]' [Citation.] In making this determination, the court 'must objectively measure the parent's conduct, "consider[ing] not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of" the parent's efforts.' " (*Aubrey T.*, *supra*, 48 Cal.App.5th at p. 327.) The "failure to provide support[ ] or failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents." (§ 7822, subd. (b).)

" '[T]he decision to terminate parental rights lies in the first instance within the discretion of the trial court, "and will not be disturbed on appeal absent an abuse of that discretion." ' " (*A.B.*, *supra*, 2 Cal.App.5th at p. 924.) " 'When applying the deferential abuse of discretion standard, "the trial court's findings of fact are

11

reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." ' " (*Ibid.*; accord, *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)

Here, Mother does not argue that there was insufficient evidence to declare Z.H. free from her custody and control.[4] As C.L. and Father point out and Mother does not dispute, the evidence is clear that the elements of section 7822 were met. Rather, Mother challenges the termination of her parental rights only on the ground that the proposed adoption arrangement is legally invalid and asks this court to remand for the trial court to determine whether "a termination of parental rights without a planned adoption is not in the best interests of her son."

The main crux of Mother's argument on appeal is that the termination of her parental rights was a precursor to C.L. eventually adopting Z.H., which would result in a legally invalid coparenting arrangement with Father. Mother, however, does not expressly argue, let alone demonstrate with any citations to the record, that the trial court relied on the legal validity of the proposed adoption arrangement when it terminated her parental rights.[5] She also fails to demonstrate that the trial court was

---

[4] Not only does Mother fail to challenge the sufficiency of the evidence before the court in determining whether the criteria for abandonment under section 7822 were met, but she makes no citation to the record demonstrating that the termination of her parental rights was not in Z.H.'s best interests.

[5] Indeed, during the trial, the court at one point admonished C.L. and Father's counsel when the attorney questioned a witness about adoption. The court explained that the adoption

12

required to take into consideration any legal impediment to the proposed adoption at issue in the related adoption case when it terminated her parental rights in this case. She relies in part on *In re Valerie W.* (2008) 162 Cal.App.4th 1, which concluded that the trial court in that case should have addressed whether there was a legal impediment to a proposed adoption by a mother and her adult daughter when terminating the appellants' parental rights. (*Id.* at pp. 4, 15–16.) But *In re Valerie W.* and similar cases, such as *In re G.M.* (2010) 181 Cal.App.4th 552, 562, which addressed under what circumstances a trial court must consider whether there were any legal impediments to adoption, were decided under Welfare and Institutions Code section 366.26. That statute, unlike Family Code section 7822, applies to children "who are adjudged dependent children of the juvenile court" and requires a finding of a child's likelihood of being adopted to terminate parental rights. (Compare Welf. & Inst. Code, § 366.26, subds. (a) & (c)(1) [requiring a court to terminate parental rights if it determines "that it is likely the child will be adopted"] with Fam. Code, § 7822 [no mention of a similar likelihood-of-adoption requirement].) Those cases thus do not apply here to a parental rights termination proceeding under Family Code section 7822.

We were similarly unable to locate any authority for the proposition that, prior to granting a petition to terminate parental rights under section 7822, a court must first ensure that any proposed adoption would pass legal muster. (See *T.P. v. T.W.*

_____

was a separate proceeding from the one to terminate Mother's parental rights: "[T]his is the termination part. This isn't the adoption part . . . ."

13

(2011) 191 Cal.App.4th 1428, 1438–1439 ["[A] contemplated adoption is not a sine qua non to a petition under section 7841[6] . . . . In addition, the Legislature has . . . [not] expressly sought to limit proceedings to terminate a parent's rights to instances in which adoption is contemplated"]; cf. *Aubrey T., supra,* 48 Cal.App.5th at p. 325 [distinguishing petitions for "the termination of parental rights of nonpresumed fathers [under section 7622] in a proposed adoption" with petitions under section "7822 [which] provides a separate and distinct mechanism for terminating parental rights based on a parent's voluntary abandonment of a child."].)  Thus, regardless of whether the proposed adoption arrangement would have been legally invalid, Mother fails to show the court erred or otherwise abused its discretion in terminating her parental rights.[7]

## II.  *The Judgment Contains a Clerical Error*

We nevertheless remand the matter with instructions to the trial court to correct a clerical error in the judgment regarding Father's parental rights.

"It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these

---

[6]  Section 7841, like section 7822, is included in part 4 of division 3 of the Family Code, and outlines who has standing to bring a petition under section 7800 et seq. (§ 7841, subd. (a).)

[7]  Moreover, Mother forfeited her argument that the proposed adoption arrangement is invalid by not raising it in the trial court.  (See, e.g., *A.B., supra,* 2 Cal.App.5th at p. 925 ["Scott forfeited appellate review of this issue because he did not raise it in the trial court"].)

records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties." (*In re Candelario* (1970) 3 Cal.3d 702, 705; accord*, People v. Baker* (2021) 10 Cal.5th 1044, 1109; see *In re Roberts* (1962) 200 Cal.App.2d 95, 97–98 [a court has "inherent power" "after final judgment and regardless of lapse of time to correct clerical errors or misprisions in its records, whether made by the clerk, counsel or the court itself"; " '[i]t is well settled that orders may be made correcting judgments *nunc pro tunc* as of their original date without notice and on the court's own motion so as to make them conform to the judicial decisions actually made and this regardless of the lapse of time' "].)

"Clerical error . . . is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' [Citation.] Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted. [Citation.] [¶] An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*In re Candelario, supra*, 3 Cal.3d at p. 705.)

Here, the trial court signed a form judgment, which the record indicates had been submitted to it by counsel for C.L. and

Father.[8]  The form judgment had not been modified to reflect that Father would retain his parental rights.  For example, the preprinted language of the judgment stated that Z.H. "is hereby declared and adjudged to be free from the custody and control of . . . all person [*sic*] claiming to be the father and/or mother of said minor . . . ."

The record, however, is clear that the trial court intended that Father retain his parental rights and that Z.H. be declared free from the custody and control of only Mother, not Father.  After explaining that it found Mother had abandoned Z.H. under section 7822, the court stated, "Therefore, I sign this judgment that frees the child from the care, custody and control of [Mother.]  [H]er parental rights are terminated by my signing of this judgment today."  The court then observed, "Now [Z.H.] is being freed from the care, custody and control of his mother," while emphasizing that father would be "allow[ed] . . . *to maintain his parental rights* . . . ."  (Italics added.)  The court's statements clearly show that it did not believe the judgment it was signing terminated Father's parental rights.  There is no question that the filed judgment, to the extent it purports to free Z.H. from Father's custody and control and terminate Father's parental rights, does not reflect the exercise of judicial discretion;

---

8    The May 23, 2024 minute order stated that the court was "in receipt" of the judgment and that "[s]aid document is signed and filed on this date."  The top left-hand corner of the signed and filed form judgment indicated it had been submitted by the "Attorney(s) For [C.L.]." and listed two attorneys and their law firm.  The record shows the same two attorneys and their law firm represented both C.L. and Father in this case, including during the trial.

16

rather, it reflects a clerical error.[9]  Accordingly, we remand to the trial court for the limited purpose of correcting that error.

---

[9]     The very nature of the parties' arguments on appeal shows they too do not construe the record to reflect an intent by the trial court to terminate Father's parental rights when it signed the judgment.  As Mother acknowledged in her opening brief, "[t]he [section 7822] petition was not directed against the father of [Z.H.]; he would retain his full parental rights."  Given the clarity of the record on this issue, it could not rationally be construed to demonstrate anything other than a clerical error.

## DISPOSITION

The judgment terminating Mother's parental rights is affirmed, but the matter is remanded to the trial court with instructions to correct the judgment to reflect that Father retains his parental rights.

BERSHON, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/31/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Z.H., a Minor. | |
| I.H. et al., | B338184 |
| Petitioners and Respondents, | (Los Angeles County Super. Ct. No. 23CCAB00002) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| K.M., | |
| Objector and Appellant. | |

THE COURT:

The opinion in the above-entitled matter, filed December 4, 2024, was not certified for publication in the Official Reports. Upon request by respondents, and good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

There is no change in the judgment.

_____

EDMON, P. J.             EGERTON, J.             BERSHON, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.